Avraham C. Moskowitz, Esq.
Chaim B. Book, Esq.
Jonathan S. Konovitch, Esq.
MOSKOWITZ, BOOK & WALSH, LLP
345 Seventh Avenue, 21st Floor
New York, New York 10001

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISABEL MANZO,<br><br>                Plaintiff,<br><br>vs.<br><br>SOVEREIGN MOTOR CARS, LTD., EDWARD FELDMAN, and JACK MATALON,<br><br>                Defendants. | **VIA ECF**<br>08 CV 1229 (JG) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO SET ASIDE THE PUNITIVE DAMAGES AWARD OR FOR REMITTITUR

MOSKOWITZ, BOOK & WALSH, LLP
Avraham C. Moskowitz (AM 8913)
Chaim B. Book (CB 4652)
Jonathan S. Konovitch (JK 9498)
Attorneys for Plaintiff
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 221-7999

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................2

ARGUMENT.....................................................................................................................5

I.    The Jury's Punitive Damages Awards Against Defendant Sovereign,
      Defendant Feldman And Defendant Matalon Should Be Upheld Under Both
      Federal And New York City Law..............................................................................5

      A.    The Jury's Punitive Damages Award Against Defendant Sovereign
            Is Warranted Under Federal Law ..............................................................5

            (i)     Defendant Sovereign Had The Requisite Intent To Support The
                    Jury's Award Of Punitive Damages. ..............................................7

            (ii)    Defendant Sovereign Did Not Make Good Faith Efforts To
                    Comply With Title VII And As Such Cannot Avail Itself Of
                    The Defense Under *Kolstad*. ....................................................10

            (iii)   Defendant Sovereign Has Failed To Establish An Advice Of
                    Counsel Defense ..........................................................................11

      B.    The Jury's Punitive Damages Awards Against Defendant Sovereign,
            Defendant Feldman And Defendant Matalon Are Warranted Under
            The NYCHRL...........................................................................................14

            (i)     The Provisions Of The NYCHRL Are To Be Construed
                    Independently And Were Intended To Be More Protective
                    Than Their State And Federal Counterparts...................................14

            (ii)    Under The NYCHRL, Sovereign And The Individual
                    Defendants Matalon And Feldman Can Only Mitigate Their
                    Liability For Punitive Damages, Not Avoid Them Entirely. .........16

            (iii)   There Is No Equivalent To The *Kolstad* Defense Under The
                    NYCHRL......................................................................................18

II.   The Punitive Damages Award Was Reasonable ..................................................19

      A.    The Defendants' Discriminatory And Retaliatory Actions Were
            Sufficiently Reprehensible To Justify The Amount Of Punitive
            Damages Awarded....................................................................................20

| B. | The Punitive Damages Awards As Against Each Defendant Were Proportionate To The Harm Actually Incurred | 23 |
|---|---|---|
| C. | The $200,000 Punitive Damages Award Is Reasonable When Compared To Comparable Cases Brought Under Federal And New York City Law. | 25 |

CONCLUSION ...................................................................................................................28

ii

# TABLE OF AUTHORITIES

Page

**Cases**

*Baker v. National State Bank,*
 801 A.2d 1158 (N.J.Super.A.D. 2002) ....................................................................................27

*Bell v. Helmsley,*
 2003 WL 1453108 (N.Y.Sup. 2003) .......................................................................................24

*BMW of North America, Inc. v. Gore,*
 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)...........................................22, 23, 24, 25

*Bogle v. McClure,*
 332 F.3d 1347 (11th Cir. 2003) ...............................................................................................27

*Chopra v. General Elec. Co.,*
 527 F. Supp. 2d 230 (D. Conn. 2007).....................................................................................27

*Farias v. Instructional Sys., Inc.,*
 259 F.3d 91 (2nd Cir. 2001)......................................................................................6, 11, 12, 14

*Farrugia v. North Shore University Hospital,*
 13 Misc.3d 740, 820 N.Y.S.2d 718 (Sup.Ct.N.Y.Co. 2006) ...............................................15, 16

*Greenbaum v. Handelsbanken, NY,*
 67 F.Supp.2d 228 (S.D.N.Y. 1999) ..................................................................................*passim*

*Gryger v. Burke,*
 334 U.S. 728 (1948) ................................................................................................................22

*Hill v Airborne Frgt. Corp.,*
 212 F.Supp.2d 59 (E.D.N.Y. 2002) ...........................................................................................6

*Hughes v. Patrolmen's Benevolent Ass'n,*
 850 F.2d 876 (2nd Cir. 1988)....................................................................................................19

*Jordan v. Bates Advertising Holdings, Inc.,*
 11 Misc.3d 764, 2006 N.Y. Slip Op. 26046 (N.Y.Sup. 2006) *reversed on other grounds*, 46
 A.D.3d 440 (1st Dep't 2007)........................................................................................18, 19, 26

*Kolstad v. Am. Dental Ass'n,*
 527 U.S. 526 (1999) .........................................................................................................*passim*

*Kuper v. Empire Blue Cross & Blue Shield,*
 No. 99 Civ. 1190, 2003 WL 359462 (S.D.N.Y. Feb.18, 2003)..................................................8

*Lamberson v. Six West Retail Acquisition*, No.
 98 Civ. 8053, 2002 WL 59424 (S.D.N.Y. Jan.16, 2002) ............................................................8

*Lynn v. TNT Logistics N. Am., Inc.*,
 275 S.W.3d 304 (Mo. App. W.D. 2008) ..................................................................................27

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*,
 256 A.D.2d 269), 682 N.Y.S.2d 167 (1st Dep't 1998.........................................................24, 26

*Morgan v. New York Life Ins. Co.*,
 507 F. Supp. 2d 808 (N.D. Ohio 2007) ...................................................................................27

*Ortiz-Del Valle v. National Basketball Ass'n*,
 42 F.Supp.2d 334 (S.D.N.Y. 1999).........................................................................................26

*Pacific Mut. Life Ins. Co. v. Haslip*,
 499 U.S. 1 (1991) ...............................................................................................................19, 24

*Parrish v. Sollecito*,
 280 F.Supp.2d 145 (S.D.N.Y. 2003) .........................................................................................6

*Payne v. Mount Hope Housing Co.*,
 No. 04 CV 2897, 2007 WL 900034 (E.D.N.Y. Mar. 25, 2007) ..................................................6

*Pugliese v. Long Island R.R. Co.*,
 2006 WL 2689600 (E.D.N.Y. Sept. 19, 2006) .........................................................................15

*Robinson v. Instructional Sys., Inc.*,
 80 F.Supp.2d 203 (S.D.N.Y. 2000) ...........................................................................................6

*Selmanovic v. NYSE Group, Inc.*,
 2007 WL 4563431, No. 06 Civ. 3046 (S.D.N.Y. Dec. 21, 2007) .............................................15

*Sorrenti v. City of New York*,
 No. 113037/02, 2007 WL 2772308 (Sup.Ct.N.Y.Co. Aug. 16, 2007) ......................................15

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
 538 U.S. 408 (2003) .............................................................................................20, 23, 24, 25

*Tse v. UBS Financial Services*, Inc.,
 568 F.Supp.2d 274 (S.D.N.Y. 2008) ..................................................................................*passim*

*Watson v. E.S. Sutton, Inc.*,
 2005 WL 2170659, 02 CV 2739 (S.D.N.Y. September 6, 2005).............................................25

*Weissman v. Dawn Joy Fashions, Inc.*,
 214 F.3d 224 (2nd Cir. 2000).............................................................................................11, 12

*Whidbee v. Garzarelli Food Specialties, Inc.*,
 223 F.3d 62 (2nd Cir. 2000) .....................................................................................................5

*Zakre v. Norddeutsche Landesbank Girozentrale,*
  541 F.Supp.2d 555 (S.D.N.Y. 2008) .................................................................................*passim*

*Zhang v. American Gem Seafoods, Inc.,*
  339 F.3d 1020 (9th Cir. 2003) ....................................................................................................27

*Zimmermann v. Associates First Capital Corp.,*
  251 F.3d 376 (2nd Cir. 2001)........................................................................................................6

## Statutes

42 U.S.C. § 1981 ......................................................................................................................*passim*

42 U.S.C. § 1983 .............................................................................................................................26

N.Y.C. LOCAL LAW No. 85 OF 2005 (Oct. 3, 2005).....................................................14, 15, 16

New York City Human Rights Law ...........................................................................................*passim*

New York State Human Rights Law ..................................................................................................15

## Rules

Fed. R. Civ. P. 50, *et seq.* ......................................................................................................1, 3, 5

Fed. R. Civ. P. 59................................................................................................................................1

Fed. R. Civ. P. 59, *et seq.* ..............................................................................................................1, 3

## Other Authorities

www.nyc.gov/html/cchr/ ...................................................................................................................18

Avraham C. Moskowitz, Esq.
Chaim B. Book, Esq.
Jonathan S. Konovitch, Esq.
MOSKOWITZ, BOOK & WALSH, LLP
345 Seventh Avenue, 21st Floor
New York, New York 10001

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ISABEL MANZO,                                         08 CV 1229 (JG)

                              Plaintiff,

          vs.

SOVEREIGN MOTOR CARS, LTD., EDWARD
FELDMAN, and JACK MATALON,

                              Defendants.

---------------------------------------------------------------


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO SET ASIDE THE PUNITIVE DAMAGES AWARD OR FOR REMITTITUR

Plaintiff Isabel Manzo submits this memorandum of law in opposition to

Defendants' motion to set aside the punitive damages award, pursuant to Fed. R. Civ. P. 50(b),

or, in the alternative, for remittitur, pursuant to Fed. R. Civ. P. 59(a) and (e). As detailed below,

Defendants' motion is baseless, and the jury award for punitive damages should be upheld in its

entirety.

## PRELIMINARY STATEMENT

Upon a finding of liability as to all defendants on all counts of harassment and retaliation brought by plaintiff under both Title VII and the New York City Human Rights Law ("NYCHRL"), the jury awarded the plaintiff compensatory damages totaling $50,000 jointly and severally against all defendants and punitive damages in the amount of $50,000 against defendant Sovereign Motor Cars, Ltd. ("Sovereign"), $50,000 against individual defendant Edward Feldman, and $100,000 against individual defendant Jack Matalon.

The punitive damage awards as against each defendant was supported by the evidence adduced at trial, which was more than sufficient for a reasonable jury to conclude that defendant Sovereign acted with either the malice or reckless indifference required under federal law to justify an award of punitive damages and that all of the defendants failed to engage in a meaningful effort to mitigate, thus justifying an award of punitive damages under New York City law.

The evidence at trial established that Sovereign had an anti-discrimination policy in place at the time of plaintiff's employment. Thus, the jury could reasonably infer that Sovereign – through the discriminatory and retaliatory actions of its agents Matalon and Feldman – knew that its discriminatory actions against Manzo likely violated the law. Moreover, the direct evidence of the egregious nature of the conduct of the individual defendants which is imputed by law to Sovereign – from Matalon's repeated and progressively aggressive harassment of Manzo, to Feldman's unconscionable termination of Manzo's employment in the face of the overwhelming evidence of the hostile work environment created by Matalon – was more than sufficient for the jury to conclude that defendant Sovereign acted with malice and reckless indifference towards Ms. Manzo's rights. Sovereign's failure to take any meaningful steps to

2

address the harassment and Manzo's termination three weeks after her complaint complete the picture of malicious and willful disregard of Manzo's rights.

The direct evidence adduced at trial was also more than sufficient for the jury to reasonably infer that the actions of the individual defendants Matalon and Feldman, and vicariously, the actions of the corporate defendant Sovereign, were insufficient to warrant a mitigation of the jury's punitive damages award as to each defendant to any amount less than what the jury did in fact award.

Moreover, the punitive damage award as against each defendant was reasonable given the reprehensibility of Matalon's repeated acts of harassment and the outrageousness of Feldman's retaliation against plaintiff, and was not so high as to "shock the judicial conscience" or run afoul of due process.

Finally, the amount of punitive damages awarded against each individual defendant by a very diligent jury was proportionate to the compensatory damages awarded against each defendant and was reasonable in light of comparable cases.

## STANDARD OF REVIEW

The respective standards for motions brought under Fed. R. Civ. P. 50 and 59 are cogently set forth by the Hon. Robet Sweet, U.S.D.J., in his opinion in *Zakre v. Norddeutsche Landesbank Girozentrale*, 541 F.Supp.2d 555 (S.D.N.Y. 2008), and bear quotation in full:

> A motion for judgment as a matter of law pursuant to Rule 50(b) is appropriately granted only when the Court determines that "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 120 (2d Cir.1998). In connection with a 50(b) motion, "the trial court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir.2001) (*quoting Smith v.*

3

*Lightning Bolt Prods., Inc.*, 861 F.2d 363, 367 (2d Cir.1988)).
"The court cannot assess the weight of conflicting evidence, pass
on the credibility of the witnesses, or substitute its judgment for
that of the jury." *Id.* Moreover:

> In making its evaluation, the court should 'review
> all the evidence in the record,' but 'it must disregard
> all evidence favorable to the moving party that the
> jury is not required to believe ....' That is, the court
> should give credence to the evidence favoring the
> nonmovant as well as that evidence supporting the
> moving party that is uncontradicted and
> unimpeached, at least to the extent that the evidence
> comes from disinterested witnesses.

*Id.* (emphasis in original, internal citations omitted) (*quoting
Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 150-51,
120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

The standard for granting a new trial pursuant to Rule 59,
Fed.R.Civ.P., is less stringent than that for judgment as a matter of
law. *See Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966,
970 (2d Cir. 1987); *Bseirani v. Mahshie*, 881 F.Supp. 778, 783
(N.D.N.Y. 1995), *aff'd*, 107 F.3d 2 (2d Cir. 1997). On a motion for
new trial, the judge may grant a new trial even if there is
substantial evidence to support the jury's verdict. *Song v. Ives
Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992). The court
may weigh the evidence for itself without viewing it in the light
most favorable to the verdict winner. *See id.*; *Paper Corp. of the
U.S. v. Schoeller Technical Papers, Inc.*, 807 F.Supp. 337, 347
(S.D.N.Y. 1992). Still, a new trial may only be granted if "the
court is convinced that the jury has reached a seriously erroneous
result, or that the verdict is against the weight of the evidence,
making its enforcement a miscarriage of justice." *Lightning Bolt
Prods., Inc.*, 861 F.2d at 370; *Taylor v. National R.R. Passenger
Corp.*, 868 F.Supp. 479, 484 (E.D.N.Y. 1994). Moreover,
"[w]here the resolution of the issues depended on assessment of
the credibility of the witnesses, it is proper for the court to refrain
from setting aside the verdict and granting a new trial." *Piesco v.
Koch*, 12 F.3d 332, 345 (2d Cir. 1993) (*citing Metromedia Co. v.
Fugazy*, 983 F.2d 350, 361 (2d Cir. 1992), *cert. denied*, 508 U.S.
952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993)).

If a district court finds that a verdict is excessive, it may order a
new trial, order a new trial limited to damages, or, under the
practice of remittitur, condition denial of a motion for a new trial
on the plaintiff's accepting damages in a reduced amount. *See*

4

> *Tingley Systems, Inc. v. Norse Systems, Inc.*, 49 F.3d 93, 96 (2d
> Cir. 1995) (*citing Phelan v. Local 305 of the United Ass'n of
> Journeymen and Apprentices of the Plumbing & Pipefitting Indus.*,
> 973 F.2d 1050, 1064 (2d Cir. 1992), *cert. denied*, 507 U.S. 972,
> 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993)). However, it is not
> among the powers of the trial court, where the jury has awarded
> excessive damages, simply to reduce the damages without offering
> the prevailing party the option of a new trial. *See id.* (*citing
> Vasbinder v. Scott*, 976 F.2d 118, 122 (2d Cir. 1992)).

*Zakre*, 541 F.Supp.2d at 559-560.

As discussed below, there was more than a legally sufficient basis for a

reasonable jury to have awarded plaintiff punitive damages and the verdict of the jury on the

issue of punitive damages was neither seriously erroneous nor against the weight of the evidence.

Having failed to meet their burden of proof under either standard, defendants' motion under Fed.

R. Civ. P. 50 and 59 should be denied in its entirety.

## ARGUMENT

## I. The Jury's Punitive Damages Awards Against Defendant Sovereign, Defendant Feldman And Defendant Matalon Should Be Upheld Under Both Federal And New York City Law

### A. The Jury's Punitive Damages Award Against Defendant Sovereign Is Warranted Under Federal Law

Federal law provides that claims for hostile work environment sexual harassment

discrimination and retaliation brought under Title VII may only be brought against the defendant

employer, not against an individual defendant. *See Whidbee v. Garzarelli Food Specialties, Inc.*,

223 F.3d 62, 74-75 (2nd Cir. 2000) (no individual liability under Title VII). Accordingly, an

award of punitive damages is warranted against a defendant employer in an action brought under

Title VII where the employer discriminates "with malice or with reckless indifference to the

federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(I). While

"[e]gregious or outrageous acts may serve as evidence supporting the [requisite intent],"

5

*Robinson v. Instructional Sys., Inc.*, 80 F.Supp.2d 203, 210 (S.D.N.Y. 2000), quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999), to recover punitive damages a plaintiff "need not show that the defendant committed egregious or outrageous acts. Rather, [she] need only demonstrate that the defendant had the 'requisite state of mind' of malice or reckless indifference." *Payne v. Mount Hope Housing Co.*, No. 04 CV 2897, 2007 WL 900034, at *3 (E.D.N.Y. Mar. 25, 2007). Furthermore, a plaintiff need prove only that her employer intentionally acted with the knowledge that it may be acting "in violation of" the law, even if it did not know it was "engaging in discrimination." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 101 (2nd Cir. 2001).

Direct evidence that an employer acted with knowledge that the discrimination and retaliation found by a jury violated federal law is not necessary to prove the requisite state of mind of the employer to justify an award of punitive damages. The Second Circuit has held that "general training in equal opportunity protocol and hiring practices is sufficient to infer awareness of Title VII requirements." *Parrish v. Sollecito*, 280 F.Supp.2d 145 (S.D.N.Y. 2003) citing *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 385 (2nd Cir. 2001) (finding that supervisor's training in equal employment opportunity permitted the jury to infer the requisite state of mind). *See also, Hill v Airborne Frgt. Corp.,* 212 F.Supp.2d 59, 76 (E.D.N.Y. 2002) (finding that it is reasonable for juries to infer that employers have acted in violation of the law "simply by virtue of the well-established Supreme Court case law on discrimination and retaliation, the long standing statutory scheme proscribing such conduct, the size of [the employer defendant] and the common knowledge in today's society that employment discrimination is impermissible.").

6

Punitive damages are inappropriate in intentional discrimination cases only:

> (1) where the employer is unaware of the federal prohibition on
> discrimination/retaliation; or (2) where the employer discriminates
> with the belief that its discrimination was lawful, either because
> the "underlying theory of discrimination may be novel or
> otherwise poorly recognized, or an employer may reasonably
> believe that its discrimination satisfies a bona fide occupational
> qualification defense or other statutory exception to liability."

*Zakre*, 541 F.Supp.2d at 562, quoting *Kolstad*, 527 U.S. at 536-37.

    (i)   <u>Defendant Sovereign Had The Requisite Intent To Support The Jury's Award Of
Punitive Damages.</u>

        There was more than sufficient evidence adduced at trial for the jury to find that
defendant Sovereign – through the actions of its Vice-President, Edward Feldman, and one of its
senior managers, Jack Matalon – discriminated against Manzo with the malice or reckless
indifference required under federal law.

        Multiple witnesses testified at trial as to the existence of Sovereign's anti-
discrimination and harassment policies.[1] (*See, e.g.*, Trial Tr. pp. 159:7-10; 272:4-17; 341:10-
342:24; 349:19-23; 415:4-6; 567:14-25.) The trial testimony also established that both Matalon
and Feldman knew that acting contrary to those policies amounted to a violation of the law.
(*See, e.g.*, Trial Tr. pp. 633:11-635:1; 748:9-15; 722:12-724:17.) Such evidence, standing alone,
has been found more than sufficient to establish the requisite intent to support a punitive
damages award. *See, e.g.*, *Tse v. UBS Financial Services*, Inc., 568 F.Supp.2d 274, 309
(S.D.N.Y. 2008) (Evidence that the employer was "generally familiar with anti-discrimination
law when it committed the discriminatory act is sufficient to permit the inference that it acted
with the requisite state of mind to justify an award of punitive damages."); *Kuper v. Empire Blue*

---

[1] Indeed, in their brief in support of their motion, defendants reference Sovereign's harassment policy and
employment manuals. (Defendants' brief, p. 5.)

*Cross & Blue Shield*, No. 99 Civ. 1190, 2003 WL 359462, at *5 (S.D.N.Y. Feb.18, 2003)

(testimony concerning knowledge that the ADA prohibited disability discrimination and receipt

of ADA training were sufficient to justify jury award of punitive damages); *Lamberson v. Six*

*West Retail Acquisition*, No. 98 Civ. 8053, 2002 WL 59424, at *5 (S.D.N.Y. Jan.16, 2002)

(knowledge that it was discrimination to punish an employee for complaining of sexual

harassment was sufficient to attribute requisite knowledge of Title VII to employer for purposes

of allowing punitive damages).

    Furthermore, the egregious and outrageous actions of Matalon and Feldman

support the jury's finding of the requisite intent of malice or reckless indifference on the part of

defendant Sovereign. The particularly egregious nature of the hostile work environment created

by Matalon was evidenced not only by his outrageously offensive harassment of Ms. Manzo on

the business trip to Houston (*see, e.g.*, Trial Tr. pp. 132:14-148:4), but by his manipulation of the

conditions of Manzo's employment and by his increasingly aggressive and retaliatory behavior

towards Manzo – in response to her rejection of his advances – in the form of his threats to her

bonus, her pay and even her career at Sovereign. (*See, e.g.*, Trial Tr. pp. 85:12-92:24; 93:5-95:2;

96:2-97:10; 99:8-104:11ff; 118:9-120:17ff; 155:7-13; 156:20-157:6; 216:16-22.) The egregious

nature of Manzo's retaliatory firing by Feldman was evidenced by his awareness of Matalon's

harassment of Manzo over a period of months (*See, e.g.*, Trial Tr. pp. 158:24-160:14; 162:10-

165:4; 166:3-168:19; 720:19-722:11); the farcical investigation conducted at his direction (*See,*

*e.g.*, Trial Tr. pp. 722:1-725:4; 726:23-730:15); the mildest of reprimands he issued to Matalon

(*See, e.g.*, Trial Tr. pp.724:9-17; 730:16-730:24); and the prompt firing of Manzo three weeks

after her complaint in retaliation therefore. (*See, e.g.*, Trial Tr. pp. 732:24-733:2).[2]

Moreover, there was no testimony by any of the defendants that the creation of

the hostile work environment or the retaliatory firing of Ms. Manzo was premised upon a

"novel" or "poorly recognized" theory of discrimination, or that the discrimination satisfied a

"bona fide ... defense or other statutory exception to liability."[3] *Kolstad*, 527 U.S. at 537.

*Accord Zakre*, 541 F.Supp.2d at 562 (Upholding an award of punitive damages where there was

no claim that the failure to promote... [plaintiff], the creation of a hostile work environment, or

the firing of... [plaintiff] met any statutory exceptions or involved any novel or unresolved legal

theories."); *Greenbaum v. Handelsbanken, NY*, 67 F.Supp.2d 228, 262-63 (S.D.N.Y. 1999)

(Noting that evidence supporting liability may also support punitive damages, especially where

"the illicit activity is an unexceptional and paradigmatic type of discrimination, one that is

commonly recognized as prohibited.").

Indeed, under a fact pattern similar to the one at bar, the court in *Greenbaum*

observed, in language equally applicable to this case, that:

> With regard to retaliation, the jury found that SNY's management
> intentionally refused to promote Greenbaum and then terminated
> her because she complained of earlier illicit activities. Again, there
> is nothing unorthodox about the contention that these activities are

---

[2] Although plaintiff has cited above some examples of the malicious and outrageous behavior of both Matalon and Feldman, the truly egregious nature of their respective actions can only truly be appreciated in the context of the overall picture painted by the testimony of Ms. Manzo, Mr. Matalon and Mr. Feldman, and by the relevant exhibits, particularly the log prepared by Ms. Manzo, her email exchanges with Matalon and her instant messaging chat with Matalon.

[3] Plaintiff's purportedly poor performance most certainly does not qualify as a bona fide defense to liability for hostile work environment sexual harassment. To the degree that defendants seek to claim that Manzo's firing was not malicious or the result of their reckless indifference to here rights because defendants reasonably believed that plaintiff's poor performance afforded them a legitimate basis for terminating her employment, the jury unequivocally rejected such a notion and not only did not believe that Sovereign thought it was acting under color of law when it fired Manzo, but saw the firing for the pretext that it was. Moreover, any attempt by defendants to claim that they acted on advice of counsel in this regard should be summarily rejected. *See* § 1A(ii), pp. 11-13 , *infra*.

> prohibited by law, and SNY concedes-indeed insists-that it
> understood that these activities would have been illegal. These
> facts could suggest to a reasonable jury that when SNY
> intentionally retaliated against Greenbaum, it did so in reckless
> disregard of her known civil rights.

*Greenbaum*, 67 F.Supp.2d at 263.

Here, the jury's verdict that Matalon was aware of Sovereign's anti-

discrimination policy and, nevertheless, sexually harassed Manzo repeatedly, outrageously and

egregiously over the better part of three months, supports a finding that defendant Sovereign

intentionally created a hostile work environment of sexual discrimination and did so with malice

and in reckless disregard of Manzo's known civil rights. Likewise, the jury's verdict that

Feldman fired Manzo because she complained about Matalon's sexual harassment supports a

finding that defendant Sovereign intentionally retaliated against Manzo and did so with malice

and "in reckless disregard of her known civil rights."[4]

    (ii)   Defendant Sovereign Did Not Make Good Faith Efforts To Comply With Title VII
         And As Such Cannot Avail Itself Of The Defense Under *Kolstad*.

As the Supreme Court observed in *Kolstad*, the "inquiry does not end with a

showing of the requisite 'malice or... reckless indifference' on the part of certain individuals...

The plaintiff must impute liability for punitive damages" to the corporate defendant, in this case

Sovereign. *Kolstad*, 527 U.S. at 539. The Court held that:

> Recognizing Title VII as an effort to promote prevention as well as
> remediation, and observing the very principles underlying the
> Restatements' strict limits on vicarious liability for punitive
> damages, we agree that, in the punitive damages context, an
> employer may not be vicariously liable for the discriminatory
> employment decisions of managerial agents where these decisions
> are contrary to the employer's 'good-faith efforts to comply with
> Title VII...' '[G]iving punitive damages protection to employers

---

[4] The justification of the punitive damages awards against the individual defendants Matalon and Feldman, pursuant to the NYCHRL, will be addressed in §IB, *infra*.

10

> who make good-faith efforts to prevent discrimination in the
> workplace accomplishes' Title VII's objective of 'motivat[ing]
> employers to detect and deter Title VII violations.'

*Kolstad*, 527 U.S. at 545 (internal citations omitted).

The operative words under the *Kolstad* defense, however, are "good-faith efforts,"
and the jury's analysis of the evidence and its finding of liability prove decisively that it rejected
any such notion of good-faith on the part of the defendants.

In rendering its verdict of liability for hostile work environment sexual
harassment discrimination against defendant Sovereign and against the individual defendant
Matalon, the jury unambiguously concluded that, notwithstanding the anti-discrimination policy
that was in Sovereign's employee handbook, Matalon's repeatedly egregious and outrageous acts
of sexual harassment against Manzo could only have occurred in an environment in which
defendant Sovereign made no good faith effort to enforce its policy, allowing, as it did, a
manager to run amok and harass an employee at will. Similarly, in rendering its verdict of
liability for retaliation against defendant Sovereign and against the individual defendant
Feldman, the jury unambiguously concluded that the "investigation" that Sovereign undertook in
the wake of Manzo's complaint was a whitewash; that Matalon was never punished in any
meaningful way for his actions; and that if Matalon's sexually harassing conduct towards
plaintiff did cease it was only because Manzo was fired in retaliation three weeks after she
complained.

(iii) Defendant Sovereign Has Failed To Establish An Advice Of Counsel Defense

The Second Circuit has held that where the defendant employer acts pursuant to
the advice of counsel that its putative discriminatory actions are consistent with the law, an
award of punitive damages will not stand. *See Farias v. Instructional Sys. Inc.*, 259 F.3d 91, 102
(2nd Cir. 2001); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 236 (2nd Cir. 2000).

11

However, defendant Sovereign's claimed reliance on the advice of counsel as a defense to punitive damages liability is unavailing and does not negate its intent.[5]

Although the defendants offered evidence at trial that they consulted with counsel following Manzo's complaint to Feldman and Battaglia (*See, e.g.*, Trial Tr. pp. 358:9-22; 724:19-725:1), they offered no evidence that would support an "advice of counsel" defense. Indeed, there was no evidence, either testimonial or otherwise, as to the content of the defendants' communications with counsel and what – if any – legal advice was dispensed. Defendants cite *Farias* and *Weissman* for the proposition that punitive damages are barred as a matter of law where counsel was consulted in advance of conduct ultimately found to be violative of Title VII. (*See* Defendant's brief at pp. 4-5.) However, the defendants in both *Zakre* and *Greenbaum* made the same argument and the respective courts in each case rejected those arguments out of hand, distinguishing *Farias* and *Weissman* and upholding an award for punitive damages.

> In both *Farias* and *Weissman*, the defendants disclosed the advice
> of counsel. *Farias*, 259 F.3d at 96; *Weissman*, 214 F.3d at 228.
> Here, while there was testimony that Nord/LB consulted with
> counsel or had documents reviewed by counsel, there is no
> evidence as to what counsel told the Bank. In *Greenbaum*, 67
> F.Supp.2d at 262-64, the court rejected an "advice of counsel"
> defense, concluding that consultation with counsel did not
> establish as a matter of law that the defendant attempted to comply
> with antidiscrimination laws. Where there are no novel legal
> issues or conflicting legal obligations, consultation with counsel
> may merely demonstrate that a defendant was aware of laws
> against discrimination and retaliation. *Id.* (citing *Ramseur v.
> Chase Manhattan Bank*, 865 F.2d 460, 467 (2d Cir.1989)).

*Zakre*, 541 F.Supp.2d at 562-63 (emphasis added).

---

[5] As argued below, there is no advice of counsel defense available under the NYCHRL, and hence neither Sovereign, nor the individual defendants, can avail themselves of such a defense to avoid punitive damages under the NYCHRL. *See* §IIB(iii), p. 16, *infra*.

As in *Zakre* and *Greenbaum*, although there was testimony at trial in this case that

Feldman and Carol Battaglia consulted with counsel following Manzo's complaint, the record is

devoid of any testimony regarding what, if anything, counsel told Sovereign to do. As the court

in *Greenbaum* concluded, under such circumstances:

> The jury's finding that SNY intentionally retaliated against
> Greenbaum thus suggests that SNY disregarded, rather than
> followed, its counsel's advice...
>
> In these circumstances, the fact that SNY retained legal counsel
> does not establish as a matter of law that SNY must have been
> trying in good faith to refrain from retaliation. *See Ramseur v.
> Chase Manhattan Bank*, 865 F.2d 460, 467 (2d Cir.1989) (holding
> that jury may infer that actions taken after consultation with
> counsel are, instead, only "strategic afterthoughts designed to mask
> discriminatory treatment").

*Greenbaum*, 67 F.Supp.2d at 263-64 (emphasis added).

If the defendants, in fact, had acted on advice of counsel in responding to

plaintiff's complaint of sexual harassment and in subsequently firing her, they undoubtedly

would have waived their attorney-client privilege and offered evidence of the specific advice

given by counsel on which they relied. Their failure to offer such evidence after emphasizing the

fact that counsel was consulted, supports the conclusion that they intentionally disregarded

counsel's advice, which in turn would represent the type of egregious and outrageous conduct

sufficient to support an award of punitive damages.

**B.** **The Jury's Punitive Damages Awards Against Defendant Sovereign, Defendant Feldman And Defendant Matalon Are Warranted Under The NYCHRL**

(i) The Provisions Of The NYCHRL Are To Be Construed Independently And Were Intended To Be More Protective Than Their State And Federal Counterparts.

Contrary to defendants' assertion,[6] claims brought under the NYCHRL are not to be evaluated under the federal standards of Title VII jurisprudence. The Local Civil Rights Restoration Act,[7] passed in 2005, was an explicit response to cases that, *inter alia*, applied a Title VII analysis to discrimination claims brought under the NYCHRL.[8]

The Restoration Act states that "the [City] Council seeks to underscore that the provisions of New York City's Human Rights Law are to be construed independently from similar or identical provisions of New York state or federal statutes." Restoration Act § 1.

Recent court rulings have made it abundantly clear that the NYCHRL was intended to be more protective than its state and federal counterparts.

> [I]n enacting the more protective Human Rights Law, the New York City Council has exercised a clear policy choice which this court is bound to honor. The Administrative Code's legislative history clearly contemplates that the New York City Human Rights Law be liberally and independently construed with the aim of making it the most progressive in the nation. Thus, the case law that has developed in interpreting both the state Human Rights Law and Title VII of the Civil Rights Act of 1964 should merely serve as a base for the New York City Human Rights Law, not its ceiling. (*See also* Local Law No. 85 [2005] of City of New York § 1 [Local Civil Rights Restoration Act of 2005]; Council Report of Governmental Affairs Div, Comm on General Welfare, Aug. 17, 2005.)"

---

[6] Defendants cite *Farias*, 259 F.3d at 101-102, for the proposition that, in analyzing whether to sustain an award of punitive damages under the NYCHRL, courts should use the more restrictive federal standard announced by the Supreme Court in *Kolstad* in construing 42 U.S.C. §1981a. Defendants' brief p. 3.

[7] N.Y.C. LOCAL LAW No. 85 OF 2005 (Oct. 3, 2005), hereinafter the "Restoration Act."

[8] Under "Construction," the Restoration Act states that "The provisions of this title shall be construed liberally . . . regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title have been so construed." Restoration Act § 7.

14

*Farrugia v. North Shore University Hospital*, 13 Misc.3d 740, 752, 820 N.Y.S.2d 718 (Sup.Ct.N.Y.Co. 2006) (footnotes omitted).

In analyzing sexual harassment claims, New York courts have followed this mandate and have differentiated between the NYCHRL on the one hand and both the New York State Human Rights Law ("NYSHRL") and Title VII on the other hand. In *Sorrenti v. City of New York*, No. 113037/02, 2007 WL 2772308 (Sup.Ct.N.Y.Co. Aug. 16, 2007), the Court recognized that Section 1 of the Restoration Act "made it perfectly clear" that the provisions of the NYCHRL were to be construed independently of similar or identical New York State or federal statutes, and, further, that courts were required to interpret NYCHRL provisions "liberally to accomplish [the law's] broad and remedial purposes..." *Id.*, at *4. Federal courts in New York have also taken note of the differences in analyzing claims under the city and state and federal laws. "While claims brought under the City Human Rights Law have traditionally been subject to the same analytical framework as claims brought under Title VII, the Restoration Act requires independent construction and permits the use of federal and state law interpretations only as a floor, not a ceiling [citing Restoration Act, § 1]... Thus ... Title VII jurisprudence is a useful guide for CHRL claims, but does not control the analysis of CHRL claims." *Pugliese v. Long Island R.R. Co.*, 2006 WL 2689600 *11 (E.D.N.Y. Sept. 19, 2006) (emphasis added); *accord, Selmanovic v. NYSE Group, Inc.*, 2007 WL 4563431 *3-4, No. 06 Civ. 3046 (DAB) (S.D.N.Y. Dec. 21, 2007).

15

(ii)　Under The NYCHRL, Sovereign And The Individual Defendants Matalon And Feldman[9] Can Only Mitigate Their Liability For Punitive Damages, Not Avoid Them Entirely.

The NYCHRL contains unique and detailed provisions governing the imposition of punitive damages, and therefore, not only is there no need to refer to federal law, doing so would severely change the plain meaning of the statute.

Subsection 8-107(13) provides, in pertinent part, that:

(d) Where liability of an employer has been established pursuant to this section and is based solely on the conduct of an employee, agent, or independent contractor, the employer shall be permitted to plead and prove that prior to the discriminatory conduct for which it was found liable it had:

(1) Established and complied with policies, programs and procedures for the prevention and detection of unlawful discriminatory practices by employees, agents and persons employed as independent contractors, including but not limited to:

(i) A meaningful and responsive procedure for investigating complaints of discriminatory practices by employees...

(ii) A firm policy against such practices which is effectively communicated to employees...

---

[9] Although the language of 8-107(13) speaks to defendant employers only, by analogy to 8-126, which deals with civil penalties that may be imposed by the Commission on New York City Human Rights itself, individual defendants may also avail themselves of the same mitigating factors to reduce a punitive damages award. 8-126(b) allows any respondent found liable of an unlawful discriminatory act or practice to plead and prove relevant mitigating factors.

The issue of the standard for a punitive damages award under the NYCHRL, as to either a corporate or an individual defendant, is an open question. Title 8 of the NYCHRL is silent on the matter and the issue has not yet been addressed by any court. In following the avowed purpose of the NYCHRL - as reiterated in the Restoration Act - to be more protective of human rights than the federal law and be the most progressive such human rights law in the nation, see *Farrugia*, 13 Misc.3d at 752, an analogy to 8-126(a) seems appropriate. "Where the commission finds that an unlawful discriminatory practice was the result of the respondent's willful, wanton or malicious act, the commission may, to vindicate the public interest, impose a civil penalty of no more than two hundred and fifty thousand dollars." Thus the applicable standard under the NYCHRL would seem to be one in which the evidence proved that the actor's act was either willful, wanton or malicious.

As set forth in this brief at §1A, *supra*, the evidence adduced at trial is more than sufficient to establish that the corporate defendant, Sovereign, and the individual defendants Matalon and Feldman, acted either willfully, wantonly or maliciously when they sexually harassed and wrongfully terminated Manzo for her complaint.

16

(iii) A program to educate employees and agents about unlawful discriminatory practices under local, state and federal law; and

(iv) Procedures for the supervision of employees...

(2) A record of no, or relatively few, prior incidents of discriminatory conduct by such employee, agent or person employed as an independent contractor or other employees, agents or persons employed as independent contractors.

(e) *The demonstration of any or all of the factors listed above in addition to any other relevant factors shall be considered in mitigation of* the amount of civil penalties... or in mitigation of civil penalties or *punitive damages which may be imposed...*

NYCHRL § 8-107(13)(d) and (e) (emphasis added).

As set forth in subsection (e), the demonstration of any or all of the factors "*shall be considered in mitigation of*" any punitive damages which may be imposed, but does not prohibit the imposition of such damages. Thus, all that is available to defendants found liable of engaging in any of the unlawful discriminatory practices set forth in § 8-107 of the NYCHRL, in a manner sufficient to warrant a punitive damages award, is the opportunity to mitigate that punitive damages through proof of the factors set forth in subsection (d).

As argued above, *see* IA(i) p. 7 and IA(ii) pp. 9-10, *supra*, the jury was not swayed by the anti-discrimination procedures that Sovereign had in place or the efforts that Sovereign or Feldman or Matalon allegedly made to comply with them. There was sufficient evidence before the jury for it to have either tacitly rejected any argument in favor of mitigation, or for it to have incorporated whichever mitigating factors it deemed worthy of consideration when determining the amount of damages. In any event, there is no basis under the NYCHRL for disturbing the jury's punitive damages award.

17

(iii)   There Is No Equivalent To The *Kolstad* Defense Under The NYCHRL.

The NYCHRL further provides that:

> (f) *The commission may establish* by rule policies, programs and
> procedures which may be implemented by employers for the prevention
> and detection of unlawful discriminatory practices by employees, agents
> and persons employed as independent contractors. Notwithstanding any
> other provision of the law to the contrary, an employer found to be liable
> for an unlawful discriminatory practice based solely on the conduct of an
> employee, agent or person employed as an independent contractor who
> pleads and proves that such policies, programs and procedures had been
> implemented and complied with at the time of the unlawful conduct shall
> not be liable for any civil penalties which may be imposed pursuant to this
> chapter or any civil penalties or punitive damages which may be imposed
> pursuant to chapter four or five of this title for such unlawful
> discriminatory practice.

NYCHRL § 8-107(13)(f) (emphasis added).

Although the New York City Council envisioned that the NYC Commission on

Human Rights might wish to promulgate policies, adherence to which would "insulate"

employers from punitive damages resulting from supervisor harassment under subsection 8-

107(13)(f) – in much the same way that *Kolstad* did with its "good faith efforts" exception – the

Commission has not done so. *See* www.nyc.gov/html/cchr/. Thus all that is available to

employers with regards to the issue of punitive damages is "mitigation" through the proof of

certain factors.

As explained in *Jordan v. Bates Advertising Holdings, Inc.*, 11 Misc.3d 764, 776,

2006 N.Y. Slip Op. 26046, 9 (N.Y.Sup. 2006) *reversed on other grounds*, 46 A.D.3d 440 (1st

Dep't 2007), the safe harbor established under federal law in *Kolstad* is unavailable as a defense to

liability for punitive damages under the NYCHRL because the City Law expressly allows only

mitigation of the amount of punitive damages; it does not permit the defendant to avoid liability

for punitive damages entirely.

18

> "[T]he New York City Human Rights Law has made good faith
> compliance procedures only a factor to be considered in mitigation
> of punitive damages, rather than a complete defense." (*Thompson v
> American Eagle Airlines, Inc.*, 2000 WL 1505972, *11, 2000 US
> Dist LEXIS 14932, *33 [2000]; Administrative Code § 8- 107 [13]
> [e].) These safe harbor provisions allow an employer to plead and
> prove various factors where liability for discriminatory conduct is
> based "solely on the conduct of an employee, agent, or
> independent contractor." (§ 8-107 [13] [d].) Among the factors that
> can be pleaded is a "meaningful and responsive procedure for
> investigating complaints" and a "firm policy against such practices
> which is effectively communicated." (*See* Administrative Code §
> 8-107 [13] [d] [1] [i], [ii].) An employer, however, cannot mitigate
> damages simply by having a responsive procedure in writing. As
> the statute clearly and logically states, the procedure must be
> "meaningful."

*Jordan, supra,* 11 Misc.3d at 777-778.

With no affirmative defense available to them under the NYCHRL, the

defendants only recourse is mitigation under NYCHRL § 8-107(13)(e), which – as argued above

– is unavailing.

## II.    The Punitive Damages Award Was Reasonable

Punitive damages must be "reasonable in their amount and rational in light of

their purpose to punish what has occurred and to deter its repetition." *Pacific Mut. Life Ins. Co.

v. Haslip*, 499 U.S. 1, 21 (1991).  An award of punitive damages should be reversed <u>only</u> if it is

"so high as to shock the judicial conscience and constitute a denial of justice." *Hughes v.

Patrolmen's Benevolent Ass'n*, 850 F.2d 876, 883 (2nd Cir. 1988).  Moreover, "[t]he Court's role

in assessing the constitutionality of a punitive damages award is not to substitute its judgment for

the jury's, or to make the award that the Court would find appropriate were it the finder of fact."

*Tse v. UBS Financial Services, Inc.*, 568 F.Supp.2d 274, 318 (S.D.N.Y. 2008)

For a jury's award of punitive damages to stand, it must comport with due

process.  Judge Lynch summarized the standard as follows:

19

> In *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct.
> 1589, 134 L.Ed.2d 809 (1996), the Supreme Court identified three
> "guideposts" for determining whether a punitive damage award is
> excessive: (1) the degree of reprehensibility of the defendant's
> conduct; (2) the disparity between the harm or potential harm and
> the punitive damages award, or in other words, the proportion or
> ratio of punitive damages to compensatory damages; and (3) the
> difference between the remedy and the civil penalties authorized or
> imposed in comparable cases.

*Tse v. UBS Financial Services, Inc.*, 568 F.Supp.2d 274, 311 (S.D.N.Y. 2008).

There is nothing in the record to support defendants' contention that the amount

of punitive damages awarded against each defendant in this case was so high as to shock the

judicial conscience and constitute a denial of justice.

## A. The Defendants' Discriminatory And Retaliatory Actions Were Sufficiently Reprehensible To Justify The Amount Of Punitive Damages Awarded

The evidence adduced at trial warrants the finding that the discriminatory and

retaliatory actions of defendants Sovereign, Feldman and Matalon were sufficiently

reprehensible to justify the punitive damages awards of amount of $50,000, $50,000 and

$100,000, respectively, awarded by the jury.

> "[T]he most important indicium of the reasonableness of a punitive
> damages award is the degree of reprehensibility of the defendant's
> conduct." *Gore*, 517 U.S. at 575. We have instructed courts to
> determine the reprehensibility of a defendant by considering
> whether: the harm caused was physical as opposed to economic;
> the tortious conduct evinced an indifference to or a reckless
> disregard of the health or safety of others; the target of the conduct
> had financial vulnerability; the conduct involved repeated actions
> or was an isolated incident; and the harm was the result of
> intentional malice, trickery, or deceit, or mere accident. *Id.*, at 576-
> 577.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

Although there was no evidence at trial that Manzo suffered any violence or threat

of violence, there was evidence as to the physical and emotional distress that Manzo suffered as

20

a direct result of Matalon's sexually harassing behavior -- both during the period of her employment at Sovereign and during the months that followed her firing -- and on account of her wrongful and retaliatory termination. (*See, e.g.*, Trial Tr. pp. 218:7-221:13.) Manzo testified that during the period of her employment she was constantly anxious, stressed and fearful; lost sleep; lost her desire to engage in physical activities that she had previously found enjoyable; and that she was mentally and physically drained and exhausted on account of the harassment she was dealing with at work. (*Id.*) Manzo further testified that after her termination she was on the brink of depression; that she lost weight; that she was anxious about working again for fear of finding herself in a situation similar to that which she found herself at Sovereign; that she suffered from stomach issues and headaches; that she suffered from a general mistrust of people; and that a feeling of worthlessness has lasted until this day. (*Id.*) By virtue of his flagrantly offensive actions (*see, e.g.*, Trial Tr. pp. 132:14-148:4) in the face of Manzo's repeated requests to stop (*see, e.g.*, Trial Tr. pp. 92:2-18; 95:13-97:10; 130:14-131:4), Matalon evinced a reckless indifference to the deleterious effect that his objectionable advances and offensive behavior were having on Manzo's physical and emotional health. (*See, e.g.*, Trial Tr. pp. 218:7-221:13.) Moreover, Feldman's pretextual firing of Manzo on charges of poor performance after he was already aware that Manzo had been the victim of Matalon's repeated, unwanted advances for as period of three months (*see, e.g.*, Trial Tr. pp. 732:24-733:2 and 158:24-160:14; 162:10-165:4; 166:3-168:19; 720:19-722:11), supports the jury's conclusions that his actions warranted a punitive damages award.

There was ample evidence at trial that Manzo was in a precarious financial situation during the period of her employment with Sovereign and that Matalon knew about her financial straits during the time that he was harassing her. (*See, e.g.*, Trial Tr. pp. 44:3-45:8;

21

462:8-463:10.) Manzo testified that, at the time that she began her employment with Sovereign, her father had recently been laid off and that she had moved home and was looking to work longer hours than those provided at her previous job in order to help pay the mortgage. (*Id.*) Manzo and Matalon both testified that they spoke about this and that Matalon was aware of this circumstance both before hiring Manzo and throughout the time he was harassing her. (*Id.*) Moreover, Matalon utilized his knowledge of Manzo's financial vulnerability by repeatedly reminding her that he controlled her salary, bonus and career prospects at Sovereign (*see, e.g.*, Trial Tr. pp. 85:12-92:24; 93:5-95:2; 96:2-97:10; 99:8-104:11ff; 118:9-120:17ff; 155:7-13; 156:20-157:6; 216:16-22.), thereby pressuring her into remaining silent about his harassment until she finally mustered the courage to complain.

The evidence at trial was overwhelming that Matalon's harassment of Manzo was not an isolated incident. In fact, the trial record amply establishes that Matalon's harassment of Manzo began from day one of her employment and continued for nearly the entire term of her employment, despite Manzo's repeated admonitions to Matalon to stop. (*See, e.g.*, Trial Tr. pp. 85:12-92:24; 93:5-95:2; 96:2-97:10; 99:8-104:11ff; 118:9-120:17ff; 132:14-148:4; 155:7-13; 156:20-157:6; 216:16-22.132:14-148:4 and 92:2-18; 95:13-97:10; 130:14-131:4). The record evidence also establishes that the harassment took place at work (*id.*), outside of work (*see, e.g.*, Trial Tr. pp. 83:9-84:21.) and on a pair of business trips related to work. (*See, e.g.*, Trial Tr. pp. 60:14, 15; 132:14-148:4) As the Supreme Court has observed, "repeated misconduct is more reprehensible than an individual instance of malfeasance." *Gore*, 517 U.S. at 577, citing *Gryger v. Burke*, 334 U.S. 728, 732 (1948).

Finally, there can be no doubt, in light of the testimony adduced at trial, that Matalon's harassment of Manzo and Feldman's firing of Manzo were no accident. Matalon

22

intentionally and maliciously manipulated the terms and conditions of Manzo's employment both to achieve his goal of a romantic relationship with Manzo and to retaliate against her when she spurned his advances. Matalon's overt threats concerning Manzo's bonus, pay and job security were as malicious as his purported friendship was disingenuous. Feldman's firing of Manzo was equally malicious in light of the detailed substance of her complaint, which was corroborated by documentary evidence, and especially when contrasted with the kid-glove treatment accorded Matalon – from the farcical questioning of his wrongdoings (*see, e.g.*, Trial Tr. pp. 370:18-374:16; 404:24-436:25, esp. 431:9-13; 746:4-747:18; 749:5-750:13; 751:20-752:4), to the "slap on the wrist" punishment he received in the form of taking home a sexual harassment DVD to watch "on his honor." (*See, e.g.*, Trial Tr. pp. 374:17-375:2; 432:12; 438:25-440:2.)

## B. The Punitive Damages Awards As Against Each Defendant Were Proportionate To The Harm Actually Incurred

The second factor to be assessed is whether the "punitive damages award was 'proportion[ate]' to the 'harm actually incurred' by plaintiff. In order to make that determination, *Gore* instructs that the Court should first consider the ratio of the punitive damages award to compensatory damages, including back pay." *Tse v. UBS Financial Services, Inc.*, 568 F.Supp2d 274, 315 (S.D.N.Y. 2008).

In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), the Court opined:

> We decline again to impose a bright-line ratio which a punitive damages award cannot exceed. Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. In *Haslip*, in upholding a punitive damages award, we concluded that an award of more than four times the amount of compensatory damages might be close to the line of

23

> constitutional impropriety. We cited that 4-to-1 ratio again in
> *Gore*. The Court further referenced a long legislative history,
> dating back over 700 years and going forward to today, providing
> for sanctions of double, treble, or quadruple damages to deter and
> punish. While these ratios are not binding, they are instructive.
> They demonstrate what should be obvious: Single-digit multipliers
> are more likely to comport with due process, while still achieving
> the State's goals of deterrence and retribution, than awards with
> ratios in range of 500 to 1, or, in this case, of 145 to 1.

*State Farm*, 538 U.S. at 425 (internal citations omitted).

The Supreme Court in *Gore* also noted that "low awards of compensatory

damages may properly support a higher ratio than high compensatory awards, if, for example, a

particularly egregious act has resulted in only a small amount of economic damages." *Gore*, 517

U.S. at 582-83 (emphasis added).

In this case, the jury awarded $50,000 in compensatory damages, jointly and

severally against all three defendants, a relatively modest number given the outrageousness of

the defendants' conduct. The $50,000 punitive damages award against defendant Sovereign and

the $50,000 punitive damages award against defendant Feldman bear a 1:1 ratio to the

compensatory damages awarded to plaintiff, while the $100,000 punitive damages award against

defendant Matalon bears a 1:2 ratio to the compensatory damages awarded. Accordingly, all of

those awards are directly in line with – and indeed at the low end of – the ratios approved by the

Supreme Court in *Gore*, *State Farm* and *Haslip*; in cases decided in this Circuit, *see, e.g.*,

*Greenbaum v. Handelsbanken*, 67 F.Supp.2d 228, 270-71 (S.D.N.Y. 1999) (ratio of 3.75:1

comported with due process); *Tse*, 568 F.Supp2d 274, 318 (SDNY 2008) (3:1 ratio of punitive to

compensatory damages within the range of ratios found to be constitutional); and in cases

decided in New York State court. *See, e.g.*, *Bell v. Helmsley*, 2003 WL 1453108, 6 (N.Y.Sup.

2003) (a 10:1 ratio is the *outside* ratio permissible by law); *McIntyre v. Manhattan Ford,

Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 271 (1st Dep't 1998) (finding that the jury award met the

24

reasonable relationship standard of "10 to 1 as an outside ratio," but nonetheless reducing the punitive damages to a ratio of about 3:1). Moreover, even when viewed in the aggregate, the total amount of punitive damages awarded – $200,000, bears a 4:1 ratio to the compensatory damages awarded and thus satisfies the standard explicitly approved by the Supreme Court in *Gore* and *State Farm*.

## C. The $200,000 Punitive Damages Award Is Reasonable When Compared To Comparable Cases Brought Under Federal And New York City Law.

The jury's award of $50,000 in punitive damages against defendant Sovereign, $50,000 against defendant Feldman and $100,000 against defendant Matalon, whether viewed individually or collectively, is well within the range of awards in comparable cases involving both federal law and the NYCHRL and bears a reasonable relationship to the amount of compensatory damages awarded in this case.

In *Greenbaum v. Handelsbanken*, 67 F.Supp.2d 228 (S.D.N.Y. 1999), Judge Sotomayor found that an award of $1.25 million in punitive damages was appropriate for claims brought under both Title VII and the NYCHRL, where the defendant had repeatedly refused to promote the plaintiff because of her sex; subjected her to a six-year pattern of discrimination; attempted to hide its actions from plaintiff; and ultimately terminated her in retaliation for complaining about the discrimination.

In *Watson v. E.S. Sutton, Inc.*, 2005 WL 2170659, 02 CV 2739 (KMW) (S.D.N.Y. September 6, 2005), Judge Wood found appropriate a punitive damages award of $717,000, remitted from $2.5 million, for claims brought under both Title VII and the NYCHRL, where the defendant was found to have systematically failed to take complaints of sexual misconduct seriously, terminated plaintiff for complaining of sexual harassment, filed false affidavits in response to her EEOC charge, and falsely accused her of committing a federal crime.

25

In *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 682 N.Y.S.2d 167, 170 (1st Dep't 1998), where the defendant was found liable for sexual harassment and retaliation, the court found a $1.5 million award of punitive damages, remitted from $2.5 million, to be a "reasonable sum that is sufficient to punish defendant and to deter future misconduct."

In *Jordan v. Bates Advertising Holdings, Inc.*, 816 N.Y.S.2d 310, the court found a $500,000 punitive damages award appropriate where defendant, including its president, harassed plaintiff about the use of her cane, knocked over her cane, reduced her responsibilities, turned her office into a storage room, called her a "cripple," and eventually terminated her on account of her perceived disability.

In *Tse v. UBS Financial Services, Inc.*, 568 F.Supp.2d 274 (S.D.N.Y. 2008) Judge Lynch found a $300,000 punitive damages award appropriate after remittitur, where the jury found UBS liable for discrimination on account of plaintiff's race and gender, where it placed plaintiff on restrictive duty and eventually terminated her employment in contrast to its treatment of several other low-performing financial analysts who were male and Caucasian and who were not placed under similar restrictions or terminated.

In *Ortiz-Del Valle v. National Basketball Ass'n*, 42 F.Supp.2d 334 (S.D.N.Y. 1999) (incorrectly applying federal law caps to claims under the NYCHRL), the court determined a punitive damages award of $250,000 was appropriate after remittitur where the jury found that the defendant had discriminated against plaintiff by failing to hire her as a referee on account of her gender.

Cases decided under 42 U.S.C. §1981 and §1983 are also appropriate benchmarks for claims brought under the NYCHRL, because neither statute limits the amount of punitive damages that can be awarded. Accordingly, the punitive damages award of $2.6 million under a

26

Section 1981 claim in *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1041-45 (9th Cir. 2003), where the defendant was found liable for discriminating against an employee based upon his ethnicity and nationality by treating him differently from Caucasian employees – both during his employment and following his termination – is instructive, as are the punitive damage awards of \$2 million per plaintiff under a Section 1983 claim in *Bogle v. McClure*, 332 F.3d 1347, 1359-62 (11th Cir. 2003) (finding liability for the discriminatory transfer of librarians on account of their race), and of \$5 million (reduced from \$10 million) for retaliation claims under Section 1981, Title VII, and the ADEA, in *Chopra v. General Elec. Co.*, 527 F. Supp. 2d 230, 245-46 (D. Conn. 2007).

      Similarly, claims under state anti-discrimination laws that do not impose caps on punitive damages awards provide appropriate comparisons for claims brought under the NYCHRL. *See, e.g.*, *Baker v. National State Bank*, 801 A.2d 1158, 1170 (N.J.Super.A.D. 2002) (upholding punitive damage award of \$1.8 million, six times the compensatory award, for age and sex discrimination claims under New Jersey state law); *Lynn v. TNT Logistics N. Am., Inc.*, 275 S.W.3d 304 (Mo. App. W.D. 2008) (awarding \$3.75 million in punitive damages for sexual harassment claims under Missouri state law); *Morgan v. New York Life Ins. Co.*, 507 F. Supp. 2d 808, 828 (N.D. Ohio 2007) (upholding punitive damages award of \$10 million for age discrimination claims under Ohio state law).

## CONCLUSION

For all the reasons stated above and based on the authorities cited herein, it is respectfully submitted that defendants' motion to set aside the punitive damages award or, in the alternative, for remittitur, should be denied in its entirety.

Dated:    New York, New York
           March 19, 2010

Respectfully submitted,

MOSKOWITZ, BOOK & WALSH, LLP

By:_____

Avraham C. Moskowitz (AM 8913)
Chaim B. Book (CB 4652)
Jonathan S. Konovitch (JK 9498)
Attorneys for Plaintiff
354 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 221-7999

28